# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Merrimack Superior Court
5 Court Street
Concord NH 03301

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## SUMMONS IN A CIVIL ACTION

Case Name:    **Maddisun Barrows v State Employees' Association of New Hampshire, et al**
Case Number:  **217-2019-CV-00539**

Date Complaint Filed: August 20, 2019

A Complaint has been filed against Richard Gulla; State Employees' Association of New Hampshire in this Court. A copy of the Complaint is attached.

### The Court ORDERS that ON OR BEFORE:

| | |
|---|---|
| October 07, 2019 | Maddisun Barrows shall have this Summons and the attached Complaint served upon Richard Gulla; State Employees' Association of New Hampshire by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| October 28, 2019 | Maddisun Barrows shall electronically file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | Richard Gulla; State Employees' Association of New Hampshire must electronically file an Appearance and Answer or other responsive pleading form with this Court. A copy of the Appearance and Answer or other responsive pleading must be sent electronically to the party/parties listed below. |

Notice to Richard Gulla; State Employees' Association of New Hampshire: If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:

Leslie Hughes Johnson, ESQ

State Employees' Association of New Hampshire
Richard Gulla
Human Rights, New Hampshire Commission

Law Office of Leslie H Johnson PLLC 46 Holderness Road PO Box 265 Center Sandwich NH 03227
207 North Main Street Concord NH 03301

c/o SEA 207 North Main Street Concord NH 03301
2 Industrial Park Drive Concord NH 03301

BY ORDER OF THE COURT

August 23, 2019

(126849)

Catherine J. Ruffle
Clerk of Court

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Merrimack Superior Court
5 Court Street
Concord NH  03301

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## MADDISUN BARROWS
## INSTRUCTIONS FOR SERVICE
## BY THE SHERIFF'S DEPARTMENT

**Case Name:**   Maddisun Barrows v State Employees' Association of New Hampshire, et al
**Case Number:**   217-2019-CV-00539

**Instructions for:** Maddisun Barrows

The attached Summons must be sent to the Sheriff's Department for service. Service must be completed on or before October 07, 2019.

**Further action is required by you**
You must:
- Print two copies of the Summons per defendant
- Print two copies of the Notice to Defendant per defendant
- Print two copies of the Complaint filed with the Court per defendant
- Make two packets for service. Each packet should contain:
    - One Summons
    - One Notice for Defendant
    - One Complaint filed with the Court
- Mail or hand deliver the packets to the Sheriff's Department in the county where each defendant resides.

**Sheriff Departments in New Hampshire:**

Belknap County Sheriff's Department:
Carroll County Sheriff's Department:
Cheshire County Sheriff's Department:
Coos County Sheriff's Department:
Grafton County Sheriff's Department:

Hillsborough County Sheriff's Department:
Merrimack County Sheriff's Department:
Rockingham County Sheriff's Department:
Strafford County Sheriff's Department:
Sullivan County Sheriff's Department:

**\*If one or more of the parties resides out of state, please click here for the requirements\***
Service must be made upon the defendant before October 07, 2019.

If the Sheriff is unable to complete service by October 07, 2019 you will receive a "Notice of Incomplete Service" from the Sheriff's Department. You may request that new paperwork be issued by electronically filing a Request for Documents. There is a fee for this request.

The Sheriff will mail the 'Return of Service' to you. You MUST electronically file the 'Return of Service' with the court by October 28, 2019.

If service is not made as directed, no further action will occur and the case may be dismissed by the court.

NHJB-2678-Se (07/01/2018)

# Important Service Information for Sheriff

### Do not file this with the court
Provide this information to the Sheriff's Department.
See Instructions for Service for more information.
**PLEASE PRINT CLEARLY**

Date: _____          Case #: _____

### Who are you requesting to be served?
Please provide whatever information you know

Name: _____

Address for service (no P.O. boxes):

_____          APT #: _____

_____

Home phone #: _____          Cell phone #: _____

Sex: ☐ Male   ☐ Female          Race: _____

Last 4 digits of SS#: xxx-xx- _____  _____  _____  _____          D.O.B. _____

Work name & address:

_____

Special instructions for service (i.e. directions, best time to serve, cautions, etc.):

_____

_____

Vehicle description/license plate:

_____

### Your Information:
Name (please print): _____

Residential address:                                Mailing address:

_____          _____

_____          _____

Phone number to contact you during business hours:

_____ Alternate #: _____

_____
Signature

◆IN-HAND SERVICE WILL INCUR EXTRA COSTS DUE TO ADDITIONAL TRAVEL◆

## SHERIFF OFFICE USE ONLY: (This will vary by Sheriff's Office)

Fees Paid: $_____ Cash #: _____ Check#: _____
Id#: _____ Waiver: _____ Money Order#: _____ Credit Card: _____
Sheriff File # _____ Authorization #: _____

NHJB-2678-Se (07/01/2018)

Instructions for filing the Return of Service:

If you are working with an attorney, they will guide you on the next steps. If you are going to represent yourself in this action, go to the court's website: www.courts.state.nh.us, select the Electronic Services icon and then select the option for a self-represented party.

1. Select "I am filing into an existing case". Enter 217-2019-CV-00539 and click Next.

2. When you find the case, click on the link follow the instructions on the screen. On the "What would you like to file?" screen, select "File Other Document" and choose "Return of Service".

3. Scan the Return of Service packet and follow the instructions in the electronic filing program to upload the Return of Service to complete your filing.

4. If the sheriff was unable to serve the paperwork, you can request new paperwork by filing a Request for Documents. On the "What would you like to file?" screen, select "File Other Document" and choose "Request for Reissued Summons" from the menu and upload the Request for Documents form.


**FAILURE TO FILE THESE DOCUMENTS MAY RESULT IN YOUR CASE BEING DISMISSED.**

August 23, 2019
Date

Catherine J. Ruffle
Clerk of Court

You can access documents electronically filed through our Case Access Portal by going to https://odypa.nhecourt.us/portal and following the instructions in the User Guide. In that process you will register, validate your email, request access and approval to view your case. After your information is validated by the court, you will be able to view case information and documents filed in your case.

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Merrimack Superior Court
5 Court Street
Concord NH  03301

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE TO DEFENDANT

Case Name:     **Maddisun Barrows v State Employees' Association of New Hampshire, et**
Case Number:    217-2019-CV-00539

You have been served with a Complaint which serves as notice that this legal action has been filed against you in the **Merrimack Superior Court**. Review the Complaint to see the basis for the Plaintiff's claim.

Each Defendant is required to electronically file an Appearance and Answer 30 days after service. You may register and respond on any private or public computer. For your convenience, there is also a computer available in the courthouse lobby.

If you are working with an attorney, they will guide you on the next steps. If you are going to represent yourself in this action, go to the court's website: www.courts.state.nh.us, select the Electronic Services icon and then select the option for a self-represented party.

1. Complete the registration/log in process. Click Register and follow the prompts.

2. After you register, click Start Now. Select **Merrimack Superior Court** as the location.

3. Select "I am filing into an existing case". Enter **217-2019-CV-00539** and click Next.

4. When you find the case, click on the link and follow the instructions on the screen. On the "What would you like to file?" screen, select "File a Response to Civil Complaint". Follow the instructions to complete your filing.

5. Review your Response before submitting it to the court.

**IMPORTANT:** After receiving your response and other filings the court will send notifications and court orders electronically to the email address you provide.

A person who is filing or defending against a Civil Complaint will want to be familiar with the Rules of the Superior Court, which are available on the court's website: www.courts.state.nh.us.

Once you have registered and responded to the summons, you can access documents electronically filed by going to https://odypa.nhecourt.us/portal and following the instructions in the User Guide. In that process you will register, validate your email, request access and approval to view your case. After your information is validated by the court, you will be able to view case information and documents filed in your case.

If you have questions regarding this process, please contact the court at 1-855-212-1234.

Filed
File Date: 8/20/2019 7:14 PM
Merrimack Superior Court
E-Filed Document

## STATE OF NEW HAMPSHIRE

MERRIMACK, SS                                                    SUPERIOR COURT

Maddisun Barrows
6B Silver Street
Rochester, NH 03867

v.

The State Employees' Association of New Hampshire
207 North Main Street
Concord, NH 03301

And

Richard Gulla, individually
c/o SEA
207 North Main Street
Concord, NH 03301

Docket # 217-2019-CV-00539

## COMPLAINT AND REQUEST FOR JURY TRIAL

NOW COMES Maddisun Barrows, Plaintiff, by and through her attorney, Law Office of

Leslie H. Johnson, PLLC, and complains against the State Employees' Association of New

Hampshire, and Richard Gulla, individually, Defendants, and in support thereof, Plaintiff

respectfully states as follows:

1.      **Plaintiff requests trial by jury.**

### INTRODUCTION

2.      Plaintiff, Maddisun Barrows, a female, brings this action pursuant to the statutory

and common laws of the State of New Hampshire and United States, particularly New

Hampshire's law against discrimination, NH RSA 354-A, et seq., and Title VII, including for

gender discrimination and sexual harassment/hostile environment, and against Mr. Gulla, as an

individual, Gulla under state law for aiding and abetting the discrimination.  Ms. Barrows also

1

brings a claim for wrongful discharge against Defendant SEA. Ms. Barrows seeks to recover all damages as allowed by law.

## PARTIES

3.      Plaintiff, Maddisun Barrows ("Plaintiff" or "Ms. Barrows") is female and age 27, and resides at 6B Silver Street, Rochester, NH 03867. Ms. Barrows was employed by Defendant SEA from on or about April 1, 2013 until June 16, 2017.

4.      Defendant State Employees' Association of New Hampshire is a non-profit New Hampshire corporation ("Defendant SEA", "SEA", or collectively with Gulla as "Defendants"). Defendant SEA's principal mailing address is 207 Main Street, Concord, NH 03301. Defendant SEA's current President is Richard Gulla c/o 207 Main Street, Concord, NH 03301. Defendant SEA's Treasurer is Avis Crane c/o 207 Main Street, Concord, NH 03301.

5.      Defendant SEA is responsible for the actions of their employees, including Gulla, under the theories of vicarious liability and/or *respondeat superior*.

6.      Defendant SEA discriminated against Ms. Barrows on the basis of her gender, as described below. Defendant SEA also retaliated against Ms. Barrows, by disciplining her and terminating her, for supporting and assisting co-worker Joseph Meagher in disputing discipline meted out to him, which constituted discrimination, harassment, and retaliation on the basis of his disability, and wrongful discharge for whistleblowing in his reporting of illegal and/or unethical activities.

7.      Richard Gulla, (hereinafter "Defendant Gulla" or "Gulla"), was the President of SEA during most, if not all, times complained of and was a supervisor to Ms. Barrows. Defendant Gulla is male, his address is unknown to Plaintiff except it is believed he lives in New Hampshire; alternatively, he may be reached c/o SEA, 207 Main Street, Concord, NH 03301. Gulla aided and abetted SEA in committing discrimination, harassment, and creating a hostile,

2

intimidating and offensive work environment for Ms. Barrows on the basis of gender, which effected the terms, conditions, and privileges of her employment.

8.    Defendant SEA was Ms. Barrows's employer, and Mr. Gulla is an individual and was a supervisor of Ms. Barrows.  Both are covered for liability under RSA 354-A, et seq., the New Hampshire Law Against Discrimination.  Mr. Gulla is liable as an individual for aiding and abetting the discrimination.

## VENUE AND JURISDICTION

9.    Venue and jurisdiction are proper as Ms. Barrows worked for Defendant State Employees' Association of New Hampshire at 207 North Main Street, Concord, Merrimack County, New Hampshire; and the unlawful employment acts complained of were committed in Concord, Merrimack County, New Hampshire.

10.    Ms. Barrows filed her Charge of Discrimination with the New Hampshire Commission for Human Rights ("NHCHR") on or about November 21, 2017, within 180 days of the last discriminatory act, which was Charge EGS(H)(R) 0046-18 / 16D-2018-00055. The Charge was withdrawn from the NHCHR and a Notice of Right to Sue was issued on May 22, 2019 and received on May 28, 2019. This Complaint is being filed within 90 days of receipt of the Notice of Right to Sue.

## STATEMENT OF FACTS

11.    Ms. Barrows was employed by SEA, from approximately April 1, 2013 until June 16, 2017 when she was terminated.  Ms. Barrows began work for SEA as a Legal Secretary, then Organizer, and finally an Internal Organizer.  Ms. Barrows is female, and was age 25 at time of termination.  At all relevant times, Ms. Barrows performed her job well.

12.    There was a general sentiment among staff that Gulla did not respect Ms. Barrows

because she was young female. He did not respect her or value her contributions because he viewed her as a physical object. Aside from the sexual comments Gulla would make, there was an obvious lack of respect. He would more frequently than not blow off his scheduled meetings with Ms. Barrows, fail to respond to her, or respond to her via one of her male colleagues. Gulla made so many sexually inappropriate jokes and references to every female person in the office, that it is impossible to identify all the specific instances. However, some of the comments are recited below.

13.     Due to his own observations, and complaints including those from Ms. Barrows, Cicirelli (Ms. Barrows's direct supervisor) coached Gulla frequently to avoid making his sexually charged comments. Ms. Barrows knows this because Cicirelli openly/informally discussed having done so with Ms. Barrows and her co-workers. However, this did not stop the inappropriate harassing/ discriminatory behavior by Gulla.

14.     Occasionally, Gulla would state he had refrained from saying something inappropriate, as though he should be rewarded for this; however, the inappropriate sentiment was still readily understood within the context of his statement, for example, "I could say something about that, but I shouldn't".

15.     In late 2014 or early 2015, very shortly after becoming president, Gulla, in a conversation he had with Mike Reynolds and Charlie McMahon (and possibly Sean Bolton), compared Ms. Barrows' physical attractiveness to that of her co-worker, L.C., by saying with respect to whom he wanted to have sexual relations, that it "depends on which side I'm on and who has a paper bag". At the time L.C. was an attorney at SEA and Ms. Barrows was a legal assistant.

16.    Mr. Gulla is also believed to have made other sexually explicit comments about wanting to "F..." Ms. Barrows, and would stare intently at her. He was also known to make jerk-off motions, though this was not in Ms. Barrows' presence.

17.    For the first several months as President of SEA, Gulla would make the sound of a dog ("woof") (like they were a "bitch") at female SEA employees as a greeting. For example, Ms. Barrows would say "good morning" in the hallway and Gulla would reply "woof", which had a gender based and sexual connotation, as he only did this to women. In fact, for the first six months of Ms. Barrows' employment "woof" was just about the only thing Gulla said to her, and he probably said it to her at least a dozen times. Ms. Barrows had repeatedly complained to her supervisor, Cicirelli, but does not believe any investigation was done, or discipline issued to Mr. Gulla, as his behavior continued during most of her employment.

18.    Ultimately, Gulla stopped making this comment after coaching by Cicirelli and perhaps others' coaching due to a complaint by a former employee, M.M., and not due to Ms. Barrows's complaints.

19.    In Spring or Summer 2015, every member of field staff (including Ms. Barrows who was an Organizer at the time) was instructed to spend a day out visiting work sites with Gulla. Ms. Barrows, because of Gulla's on-going gender based and sexually inappropriate behavior, told her supervisor, Cicirelli, that she was uncomfortable being alone in a car with Gulla, which was readily understood by Cicirelli as being because of sexual harassment. It was agreed that Ms. Barrows would have another person with her for this excursion, but ultimately, she never went with Gulla for this purpose.

20.    In early March 2016, Ms. Barrows wrote a letter to Gulla signed by all female employees of the SEA requesting the organization's support of the international women's strike

5

being organized by those who had put together the women's march on Washington DC. The organization had shown support for the march and the political ideals it represented, and this action was specifically related to women's rights in the workplace.

21.     Gulla would not respond to Ms. Barrows' letter and refused to speak to her, or any woman, about the request. When Ms. Barrows tried to talk to Gulla about it he deflected, and instead had all discussions with, and ultimately issued his denial, through her male colleague, Brian Hawkins, government relations coordinator and CUE president, who was aware of the request.

22.     In July 2016, Gulla came into Ms. Barrows' office for presumably work-related reasons, but proceeded to tell her a story about how in grade school his classmates bullied him by calling him "little dick" and that he got so mad about it he broke another child's nose. Ms. Barrows did not have any substantial response, except perhaps "oh no", or something like that to try to break up the awkwardness. Throughout the incident she felt very uncomfortable because he was essentially talking to her about his insecurity about his penis, and she was also concerned that he thought it was at all appropriate to share the story with her.

23.     Ms. Barrows assisted a co-worker, JM, who had filed several Unfair Labor Practices Act Complaints (ULPs) during the Fall of 2016.  Upon information and belief, JM was targeted because of his disability and request for reasonable accommodations, and for his whistle blowing.

24.     On or about October 31, 2016, a meeting was held for JM, which was attended by Ms. Barrows as his steward, and it was agreed that several disciplinary documents would be removed from his personnel file.

25.     Thereafter, JM was retaliated against, and disciplined, for having requested a reasonable accommodation for work tasks, which other employees without disabilities were treated more leniently about, and for having reported illegal electioneering activities by Cicirelli and Gulla.  Ms. Barrows supported and assisted JM in dealing with his employment issues and discipline.

26.     When JM attempted to formally request a reasonable accommodation, in house legal counsel Glenn Milner, was unable or unwilling to answer his questions.  Attorney Krupski also referred him back to the SEA office.

27.     In March or April 2017, at a steward training event, Ms. Barrows witnessed Gulla make inappropriate sexual comments to a new female co-worker, LP, in a way that he often did. The co-worker made a comment about having been in bed all weekend (because she had been sick), and Gulla said in a suggestive tone, "I could say something about that, but I won't, because it would be inappropriate."

28.     Between March 13 through 17, 2017, Ms. Barrows had lunch with several co-employees at the Tea Garden, during which JM texted her that along with the other stories she should share the one about Cicirelli's inappropriate electioneering.  Upon information and belief, not long after that JM had a conversation with other SEA employees who affirmed they too had heard about, or had knowledge of, the inappropriate campaign activities.

29.     Upon information and belief, JM also verbally complained to other employees, and sent one or two emails complaining about Cicirelli's behavior, which included but was not limited to personally contributing to Gulla's election campaign, giving him communication help and campaign strategy, and taking campaign calls at work.  Upon information and belief, it was

7

JM's understanding, as it is Ms. Barrows, that it was illegal under federal law to make these campaign contributions.

30. Upon information and belief, thereafter, somewhere around March 20, 2017, SEA employee and steward McMahon had a conversation with Attorney Milner, then inside (general) counsel, and outside counsel, discussing JM's discipline and that it appeared Cicirelli had it out for JM, and he outlined the potentially illegal electioneering improprieties.

31. During March or April through at least June 2017, there were supposedly meetings going on about the complaints by JM and others about the Cicirelli and Gulla illegal campaign activities. In addition, JM was making requests for reasonable accommodations due to his disabilities, and Ms. Barrows was assisting him in his grievances which were related to alleged performance issues connected to his disabilities, but for which he was not provided with requested accommodations.

32. In April 2017, Gulla, Cicirelli, and Ms. Barrows spent a day visiting worksites in northern New Hampshire. Ms. Barrows told Gulla ahead of time that she preferred to drive because she gets car-sick on long drives as a passenger. On the morning of the trip, Gulla was waiting in his car and instructed Ms. Barrows to get in as a passenger and that he would be driving. Ms. Barrows reminded him about her request due to car sickness, but he insisted. Ms. Barrows spent most of the day nauseated in the back seat with the two men in the front, and she repeatedly complained to them of her nausea. It is unlikely Mr. Gulla would have treated a male in this manner.

33. On or about April 5, 2017, Ms. Barrows was ordered in from her field work with members by Attorney Milner to attend a disciplinary meeting with JM, himself, Gulla, and

Attorney Krupski. This action was intimidation towards Ms. Barrows and would have been inappropriate even if done by her supervisor Cicirelli.

34.     Ms. Barrows attended several other meetings, both before and after this meeting, to assist JM. This included a meeting on or about May 17, 2017 where his need for reasonable accommodations was discussed.

35.     JM was ultimately terminated on May 26, 2017, and later he filed union grievances and a charge of discrimination with the NH Commission for Human Rights.

36.     On or about June 12, 2017 at approximately 11:00 AM, Ms. Barrows checked in with Cicirelli, to discuss taking June 14 off so she could bring her brother to a medical appointment.

37.     Ms. Barrows told Cicirelli that she would need the morning and might decide to take the entire day off, but did not specify how she would use the additional time, and at the time did not have any plans other than taking her brother to his appointment. It was not required, nor typical, to discuss reasons for requesting any kind of leave, however, Ms. Barrows wanted to confirm this would be an appropriate use of her sick leave. If it had not been, she would have taken a personal day. Ms. Barrows submitted her leave slip with a note asking if she needed to change it to personal day, but it was returned to her as approved by Cicirelli without any further reply.

38.     Upon information and belief, Respondent's contract allows for dependent care sick leave, however, Ms. Barrows was uncertain whether it applied to her brother as he was not her dependent. Ms. Barrows had been allowed to take sick leave to bring non-dependent family to medical appointments in the past. Ms. Barrows also wanted to update Cicirelli because they had similar familial struggles, and had been supportive to one another in the recent past.

9

39.   Mr. Cicirelli asked Ms. Barrows if she would prefer to use annual leave or sick leave, both of which she had available. Ms. Barrows said she would prefer to use sick leave in order to preserve her annual leave for vacations. Mr. Cicirelli said he would check with Kristen Mulcahy, the business administrator, to make sure it was okay, and would get back to her. Ms. Barrows told Cicirelli she would be happy to change it to annual leave if required. Mr. Cicirelli did not get back to her either way.

40.   During this same general time period, Ms. Barrows was still acting as a steward for former co-worker JM relating to his grievances, including for his termination, and JM was pursuing the investigation of the illegal electioneering activities.

41.   After Ms. Barrows took her brother to his appointment, she went to lunch at Hermanos with three individuals, JM and LC (who unexpectedly brought CL with her), and they discussed JM's situation with SEA. While there, several other individuals (employees of SEA) arrived at the restaurant and joined them; Bolton, Snyder (then VP of CUE and a former representative employed by SEA. Because there were SEA employees there, word apparently got back to SEA (Gulla and Cicirelli) that Ms. Barrows had lunch with these individuals.

42.   This was not a work lunch, however, although she had talked to JM after the lunch, in support of him, and as part of her steward activities. To the best of Ms. Barrows's knowledge there was no rule precluding doing any steward work (or any other kind of work) on a day off.

43.   During that same evening of June 14, Ms. Barrows prepared and submitted the grievance for JM over the February 28, 2017 written warning to Step 3.

44.   On June 15, Ms. Barrows was called into a meeting and questioned by Cicirelli and Milner, who wanted to know what she had been doing on June 14th. She explained that she

had taken her brother to a medical appointment, which actually was none of their business as it was private. They further questioned her as to what work activities she had done that day, and she asked "SEA or steward work?" They replied "either", and she said other than doing the steward work and filing the June 14th appeal for JM, that was it. They persisted questioning her if there was "anything else", and she said "no, that there was nothing else that was relevant," which was true. It was none of their business who she had lunch with on her day off. They were obviously upset that she had been at lunch with JM, and potentially that she was there with others, and that she had done steward work and otherwise acted in support of JM.

45.     On June 16, without any other investigation or prior disciplinary action, Ms. Barrows was terminated by Defendant SEA, which claimed that she inappropriately used sick leave and was untruthful about the reason for taking the day off. However, she had taken her brother to his appointment, did not have to give any reason for taking leave, and had offered to take it as a vacation day if taking it as a sick day was a problem.

46.     It was obvious they were angry about the lunch and her meeting with JM, and potentially others about his grievance issues. Apparently, they were angry that she would not discuss JM's claims and what was discussed at the Hermanos lunch, which was none of their business. What was discussed at Hermanos was private, off work hours, none of their business, and partially involved claims against SEA and her representation and support of JM.

47.     Ms. Barrows filed a grievance regarding her termination, and over 2.5 months later, when at Step II, Defendants attempted to unilaterally rehire Ms. Barrows and ordered her to return to work. This decision issued on approximately the day she was ordered to return to work on a Monday, did not specify the terms under which she would return, did not award her back

11

pay, and did not resolve her grievance, nor was it a settlement thereof.  Defendants did not follow the CBA process.

48.    When Ms. Barrows did not return to work under the Defendants' invalid mandate, as she had not reached a resolution of her grievance and because of the hostile environment (both based on her involvement in the union process as a steward, and due to gender discrimination), on or about August 31, 2017, the Defendants purportedly "terminated" her again.

49.    By August 31, 2017, Ms. Barrows had already applied for, been accepted to, and paid, to start a course of study at UNH, and was no longer interested in returning to the hostile environment as described herein.

50.    The hostile environment was severe and/or pervasive such that a reasonable person would have found same to be offensive and would not be expected to endure same.

51.    Defendants knew or should have known that their conduct was illegal, unethical, intentional, malicious, knowing, egregious, oppressive, wanton, done deliberately and/or with reckless indifference, reckless, contrary to the law, negligent and/or grossly negligent, and thus justifies an award of enhanced/liberal compensatory damages.

52.    Plaintiff claims damages which are within the jurisdictional limits of this Court. The discrimination, harassment directed towards Ms. Barrows, as well as the wrongful discharge and other allegations as alleged herein, have caused her damages, including but not limited to punitive damages, liberal/enhanced compensatory damages, back pay, front pay, lost benefits, loss of future earning capacity, emotional distress, embarrassment, humiliation, aggravation, anxiety, fear, loss of sleep and other physical and emotional symptoms, health insurance, life insurance, retirement benefits including employer contributions, expenses for medical treatment, damages to reputation, tax consequences, pre and post-judgment interest, reasonable costs and

12

attorney fees related to this action, and all other damages as allowed by law. Ms. Barrows also requests all equitable relief to which she may be entitled.

## COUNT I
## WRONGFUL DISCHARGE (SEA)

53. Plaintiff incorporates herein each and every allegation raised elsewhere in the Complaint as if fully set forth herein, and further states as follows:

54. Ms. Barrows participated in activities which are encouraged, supported by, and in furtherance of public policies, including rules, laws, regulations and union documents, which included, but were not limited to, her union activities/steward activities, and by her connection with JM and her support of him as a co-employee on the issues he was pursuing.

55. Ms. Barrows' was harassed, intimidated, retaliated against, had her privacy violated, and was fired for her support and representation of JM, who was also making requests supported by public policy, such as a reasonable accommodation for his disabilities and requesting investigation of election activities which were believed to be illegal.

56. Ms. Barrows was wrongfully discharged from employment by Defendant SEA.

57. Ms. Barrows claims the wrongful discharge has caused her damages as set forth elsewhere herein, and claims all damages as allowed by law, and all equitable relief to which she may be entitled.

## COUNT II
## GENDER DISCRIMINATION/ SEXUAL HARASSMENT/ HOSTILE ENVIRONMENT
## NH RSA 354-A, et seq. and TITLE VII (SEA)

58. Ms. Barrows incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

59. NH RSA 354-A, et seq., and Title VII, prohibit discrimination on the basis of gender, including a hostile environment, whether statements and actions are based on sexual

13

harassment, or comments based on a person's gender, or hostility towards someone because of their gender.

60.  Ms. Barrows suffered all of these as set forth above, by the conduct, statements and behavior of Mr. Gulla, who was supervisory to her, and SEA's failure to put an end to the behavior. For example, see par. 12-18 above, which are incorporated herein by reference.

61.  Ms. Barrows claims that the treatment she received as described herein was on the basis of her gender, and constituted sexual harassment and gender discrimination, which caused a hostile environment rising to the level of an adverse action, all contrary to and in violation of NH RSA 354-A, et seq, and Title VII.

62.  Ms. Barrows claims the gender discrimination, sexual harassment and hostile environment caused her damages as set forth elsewhere herein, and claims all damages as allowed by law, and all equitable relief to which she may be entitled.

COUNT III
AIDING AND ABETTING DISCRIMINATION
RSA 354-A, et seq. (Gulla)

63.  Ms. Barrows incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

64.  Mr. Gulla as an individual through his actions, aided and abetted his employer SEA, in discriminating against Ms. Barrows, as described elsewhere in this complaint, which is contrary to NH RSA 354-A, et seq., including RSA 354-A:2, XV(d).

65.  Ms. Barrows claims that Gulla's aiding and abetting of his employer's gender discrimination, including sexual harassment, created a hostile environment as described herein.

66.  Said actions caused Ms. Barrows damages as set forth elsewhere herein, and she claims all damages as allowed by law, as well as all equitable relief to which she may be entitled.

14

WHEREFORE, Plaintiff respectfully prays that this Honorable Court and/or a jury order the following relief:

A.    Back wages, together with lost fringe benefits and any other benefits, including increased retirement benefits, which Plaintiff would have earned;

B.    Future wages, fringe benefits, including retirement benefits and other benefits;

C.    Reasonable attorney's fees, interest and costs;

D.    Enhanced/liberal compensatory damages;

E.    Punitive damages;

F.    An amount to be awarded by the Court to make up for any adverse tax consequences due to any judgment or award;

G.    All other damages as set forth herein and as allowed by law;

H.    All equitable relief to which she may be entitled; and

I.    Such other and further relief as is just and equitable.

> Respectfully submitted,
> MADDISUN BARROWS, Plaintiff
> By her attorney

Dated: August 20, 2019                    By:      /s/ LESLIE H. JOHNSON
> Leslie H. Johnson, Esquire - NHBA #5545
> Law Office of Leslie H. Johnson, PLLC
> PO Box 265
> Center Sandwich, NH 03227
> 603.284.6600
> leslie@lesliejohnsonlaw.com

15